UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SKENDER RADONCIC, | ) |
|       Plaintiff | ) |
| v. | ) 2:25-cv-00138-LEW |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | ) |
|       Defendant | ) |

**ORDER ON PLAINTIFF'S MOTION
TO MODIFY THE ADMINISTRATIVE RECORD**

Plaintiff seeks to recover benefits under a group welfare benefit plan issued to the employer of Plaintiff's spouse and administered by Defendant. Plaintiff, who asserts the claim pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., alleges that Defendant wrongly denied him benefits. Through his motion, Plaintiff asks the Court to order Defendant to submit certain documents for in camera review as, according to Plaintiff, the documents should be included in the administrative record.[1]

After consideration of the parties' arguments, the Court grants Plaintiff's motion in part. The Court grants Plaintiff's request for in camera review by the Court and defers ruling on the request to modify the administrative record to include the documents.

---

[1] Plaintiff refers to 60 documents and 60 pages in his motion. (Motion, ECF No. 24, ¶¶ 13, 23.) The Court counts 28 highlighted entries on the privilege log submitted as Exhibit A. (Ex. A, ECF No. 24-1.) The 28 entries appear to comprise 46 pages and include duplicative Bates numbers.

## BACKGROUND

In 2018, Plaintiff accidentally injured two fingers on his right hand, which injury ultimately resulted in the amputation of his index finger in August 2023. (Administrative Record at PageID #47, ECF No. 19-1.) That same month, Plaintiff's spouse submitted a benefit claim for Plaintiff through her employer's Group Accident Insurance Policy. (*Id*. at PageID #50–287.)

In October 2023, Defendant denied the claim, asserting that the loss was not covered. (*Id*. at PageID #288–90.) Plaintiff, through counsel, appealed from the denial on March 5, 2024. (*Id*. at PageID #293–304.) On April 23, 2024, Defendant's ERISA Appeal Committee upheld the denial of Plaintiff's claim. (*Id*. at PageID #1911–13.) Plaintiff then filed this ERISA action alleging that he is entitled to benefits under the policy. (Complaint, ECF No. 1.)

Defendant filed the administrative record under seal on September 15, 2025. Plaintiff now seeks the production of certain documents and to modify the administrative record to include additional documents. (Motion, ECF No. 24.) The documents consist of pre-denial emails, litigation hold notices, file copy requests, a coverage letter, and redacted claims notes. Defendant contends the documents are protected by the attorney-client privilege and as attorney work product.[2] (Ex. A, ECF No. 24-1.)

---

[2] The only document for which Defendant claims attorney work product is a template litigation hold notice. (Ex. A, ECF No. 24-1.) This order's analysis thus focuses on the documents being withheld under the attorney-client privilege.

## LEGAL STANDARD

"The attorney-client privilege is the oldest of the privileges for confidential communications" and is meant to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). But because "the cloak of confidentiality has costs as well as benefits," courts "take care to construe this privilege narrowly" and have acknowledged exceptions to the attorney-client privilege. *In re Grand Jury Subpoena,* 662 F.3d 65, 71 (1st Cir. 2011).

One such exception to the privilege is the ERISA fiduciary exception, which "provides that an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration." *Smith v. Jefferson Pilot Fin. Ins. Co.*, 245 F.R.D. 45, 47 (D. Mass. 2007) (quoting *United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir. 1999)).[3] An ERISA fiduciary may still invoke the privilege for communications between the fiduciary and its attorneys on non-fiduciary matters. *Bowers v. Russell*, No. 22-cv-10457-PBS, 2025 WL 1474307, at *5 (D. Mass. Mar. 26, 2025). Non-fiduciary matters include "when an ERISA trustee seeks legal advice for his [or her] own protection," so "where a plan fiduciary retains counsel in order to defend [it]self against the plan beneficiaries . . . , the attorney-client

---

[3] Courts cite two rationales for the fiduciary exception to the attorney-client privilege: (1) the beneficiaries are the real clients because the trustee receiving the legal advice is acting on their behalf; and (2) the fiduciary has a common law duty to disclose to the beneficiaries any information relating to the administration of the trust. *See, e.g.*, *Wachtel v. HealthNet, Inc.*, 482 F.3d 225, 231 (3rd Cir. 2007); *United States v. Mett*, 172 F.3d 1058, 1063 (9th Cir. 1999).

privilege remains intact." *Smith*, 245 F.R.D. at 48 (internal citations and quotations omitted).

"In order to determine whether a particular attorney-client communication concerns a matter of plan administration or seeks legal advice for the fiduciary's own benefit, 'courts engage in a fact-specific inquiry, examining both the content and context of the specific communication.'" *Id.* (quoting *Asuncion v. Metro. Life Ins. Co.*, 493 F. Supp. 2d 716, 720 (S.D.N.Y. 2007)). Context includes the timing of the communication. "If the communication occurred during the pendency of a benefit claim and not after a decision denying benefits, it more likely concerns administration of the benefit claim." *McFarlane v. First Unum Life Ins. Co.*, 231 F. Supp. 3d 10, 14 (S.D.N.Y. 2017). But "after the challenged benefits determination occurs, 'there should be little need for administrators to consult counsel regarding a specific benefits determination.'" *Smith*, 245 F.R.D. at 48 (quoting *Asuncion,* 493 F. Supp. 2d at 720–21). Therefore, "'[f]requently, the key question is whether the communication was made before or after the final decision to deny benefits.'" *Id.* (quoting *Asuncion,* 493 F. Supp. 2d at 720).

### DISCUSSION

Plaintiff argues that the disputed documents were generated before Defendant made its final benefits denial decision on April 24, 2024, and, therefore, the documents are within the fiduciary exception and should be produced and included in the administrative record. (Motion ¶¶ 15, 23.) Defendant contends that the fiduciary exception does not apply because the interests of Plaintiff and the ERISA plan administrator significantly diverged

4

as of March 5, 2024, the date Plaintiff, through counsel, appealed from the initial denial of benefits. (Response at 7, ECF No. 26.)

The Court must "'engage in a fact-specific inquiry, examining both the content and context of the specific communication'" in order to "determine whether a particular attorney-client communication is subject to the ERISA fiduciary exception." *Bowers*, 2025 WL 1474307, at *5 (quoting *Smith*, 245 F.R.D. at 49). At this stage, the Court has only the context—that the withheld communications occurred before Defendant issued its final determination. While the context might suggest that the documents are within the fiduciary exception to the privilege, the content must be assessed given that the communications occurred after Defendant's receipt of Plaintiff's appeal letter, which Defendant maintains "made the threat of litigation more than a mere possibility" and set up a sufficiently adversarial relationship to maintain privilege over the documents. (Response at 10 (quoting *Olsen v. Standard Insurance Company*, No. 13-CV-576, 2013 WL 12444579, at *3 (D. Minn. Oct. 17, 2013)).)

A central question is whether the potential litigation caused Defendant to seek legal advice for its own benefit, in which case the fiduciary exception would arguably not apply. Because the content is highly relevant to the Court's assessment of Defendant's claim of attorney-client privilege, the Court's review of the documents is necessary.

## CONCLUSION

As explained above, the Court must review the disputed documents before ruling on Plaintiff's request to modify the administrative record. The Court, therefore, grants Plaintiff's motion in part. The Court grants Plaintiff's request for in camera review. On

5

or before December 12, 2025, Defendant shall submit the documents highlighted in Plaintiff's Exhibit A to the Court for in camera review. The Court defers ruling on Plaintiff's request to modify the administrative record. Upon review of the documents, the Court will determine whether Defendant must produce the documents to Plaintiff and, therefore, whether the documents shall be included in the administrative record.

## **NOTICE**

Any objections to the Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 5th day of December, 2025.